UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DEANNA BAKER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CV-06-6-B-W |
| | ) | |
| SECURITAS SECURITY | ) | |
| SERVICES USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO STAY AND MOTION TO COMPEL ARBITRATION**

Deanna Baker claims her former employer, Securitas Security Services USA, Inc. (Securitas), waived its contractual right to compel arbitration of her Maine Human Rights Act (MHRA) and state tort law claims by failing to file for arbitration when Ms. Baker initiated her MHRC complaint and instead waiting and only moving to compel arbitration after she later filed a civil claim in federal court. Concluding that the arbitration agreement is effective and has not been waived, this Court grants Securitas' motion to stay this action and to compel arbitration.

**I.  Statement of Facts**

In June of 2002, Pinkerton's Inc. (Pinkerton's) hired Deanna Baker as a security guard. *Compl.* at ¶ 5 (Docket # 1 – Attach. 1); *Pl.'s Obj. to Def.'s Mot. to Stay Proceedings and Compel Arbitration* at 1 (Docket # 17)(*Pl.'s Obj.*). On June 20, 2002, Ms. Baker signed an "Acknowledgment of Receipt of and Agreement to Pinkerton's Arbitration Program":

> I, Deanna M. Moore,[1] have received Pinkerton's Arbitration Program brochure. I agree to comply with the terms of this Pinkerton Arbitration Program. I understand that

---

[1] The agreement was signed by a "Deanna M. Moore". However, Defendant has asserted and Plaintiff has not denied that she has since changed her last name to Baker. *See Def.'s Mot. to Stay Proceedings and Compel Arbitration* at 2 n.3 (Docket # 15).

> compliance with the Pinkerton Arbitration Program is a condition of my employment with Pinkerton. I understand that the Pinkerton Arbitration Program provides that disputes between Pinkerton and myself shall be resolved through binding arbitration rather than by a judge or jury. I understand that the Pinkerton Arbitration Program does not create a contract of employment between Pinkerton and myself, neither express nor implied. My employment with Pinkerton is 'at will'.

*Acknowledgment of Receipt of and Agreement to Pinkerton's Arbitration Program* (Docket # 15 – Exh. A).

At some point, Securitas became the successor-in-interest to Pinkerton's,[2] and the Securitas Arbitration Program replaced Pinkerton's Arbitration Program. *See Securitas Arbitration Program* (Docket # 18 – Exh. A); *Def.'s Reply to Pl.'s Obj. to Def.'s Mot. to Stay Proceedings and Compel Arbitration* at 2-3 (Docket # 18)(*Def.'s Reply*). On June 9, 2003, Ms. Baker signed a new Arbitration Program Acknowledgment:

> I have received a copy of the Securitas Arbitration Program brochure which sets forth the terms of the program. I understand that compliance with the Company's Arbitration Program is a condition of my employment. This program provides that disputes between Securitas and myself shall be resolved through binding arbitration rather than by a judge or jury, which is waived by both parties.

*Arbitration Program Acknowledgment* (Docket # 18 – Exh. B).

The Securitas Arbitration Program "does not limit employees from using state or federal administrative processes". However, if the matter is not resolved administratively, the employee is required to proceed "through arbitration rather than going to court". *Securitas Arbitration Program,* Section I, at 7. *See also id.* at 5 (noting that "by being employed with Securitas, all employees agree to be covered by the program and waive the right to use the court system"). The program covers any claims "an employee may have against the Company or against its officers, directors, employees, or agents in their capacity as such…whether or not such claims arise out of an employee's employment (or termination)…includ[ing]…tort claims; claims for

---

[2] The specifics are not a matter of record; however, Plaintiff concedes that "Securitas is apparently the successor in interest to Pinkerton's". *Pl.'s Obj.* at 1.

harassment, discrimination…" *Id.,* Section II, at 9.[3]

Ms. Baker alleged that while she was working for Securitas, she was repeatedly harassed, disrespected, and discriminated against because she is a woman. *Compl.* at ¶ 8. The alleged harassment included spreading of false rumors that she was having an affair with another employee to the point of telling the other employee's wife, informing her that the worst thing that ever happened to women was when they were given rights, announcing over the mill loudspeaker that she was incompetent, telling her that the only reason she had received an employment award was that she was a woman, repeatedly subjecting her to sexually-offensive comments by male workers, and disciplining her for absenteeism when similarly situated male employees were not. *Id.* Ms. Baker's complaints to management were ignored and ultimately she became depressed and underwent psychological treatment. *Id.* at ¶¶ 10-11.

After December 11, 2003, Ms. Baker took a medical leave of absence from work to address health issues caused by the hostile work environment. *Compl.* at ¶ 12. In June of 2004, she filed a charge of unlawful discrimination with the MHRC against Securitas. *Compl.* at ¶ 15; *Def.'s Mot. to Stay Proceedings and Compel Arbitration* at 2 (Docket # 15)(*Def.'s Mot.*); *Pl.'s Obj.* at 1-2. On May 31, 2005, after "investigation and consideration", the MHRC found no "reasonable grounds to believe that unlawful discrimination has occurred", and it dismissed the complaint. *Letter from MHRC* (Docket # 15 – Exh. B). On December 6, 2005, Plaintiff Deanna Baker filed suit in Hancock County Superior Court, alleging a violation of the MHRA and the intentional or negligent infliction of emotional distress. *Compl.* On January 13, 2006, Securitas removed the case to this Court. *Notice of Removal* (Docket # 1). On February 27, 2006, Defendant filed a

---

[3] In relevant part, Pinkerton's Arbitration Program is almost identical to the Securitas Arbitration Program. *See Pinkerton's Arbitration Program,* Section I, at 5, 7; Section II, at 9 (Docket # 15 – Exh. C). Pinkerton's Arbitration Program also notes that "[a]ny references in this program to Pinkerton or to the Company will be a reference also to all Pinkerton subsidiaries and affiliated entities…all successors and assigns of any of the aforementioned". *Id.,* Section II, at 8.

3

Motion to Stay Proceedings and Compel Arbitration, on the ground that the issues are subject to arbitration under written agreement. *Def.'s Mot.* Plaintiff objected on March 20th, *Pl.'s Obj.*, and Defendant replied on March 31st. *Def.'s Reply.*

## II. Discussion

### A. The Law

Section 3 of the Federal Arbitration Act (FAA) provides that "upon being satisfied that the issue involved…is referable to arbitration" under "an agreement in writing for such arbitration", the court in which a suit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…." 9 U.S.C. § 3.[4] A motion to compel arbitration brought pursuant to section 3 requires the court to determine: (1) whether there is a written agreement to arbitrate, (2) whether the dispute falls within the scope of that arbitration agreement; and, (3) whether the party seeking arbitration has waived the right to compel arbitration. *See Bangor Hydro-Electric Co. v. New Eng. Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155-56 (D. Me. 1999)(citation omitted); *Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.,* 222 F. Supp. 2d 50, 52 (D. Me. 2002)(citations omitted). Federal and Maine law cast a generally favorable eye on arbitration agreements. *See Johnson Controls*, 222 F. Supp. 2d at 52-53 ("Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration")(citing *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 528 (1st Cir. 1985)(internal citation omitted)). *Cf. V.I.P., Inc. v. First Tree Dev. Ltd. Liab. Co.,* 2001 ME 73, ¶ 4, 770 A.2d 95, 96 ("'Maine has a broad presumption favoring substantive arbitrability'…[t]he presumption requires a finding that the

---

[4] When an action is based on diversity jurisdiction, as here, section 3 "may be invoked only if the suit is grounded in a maritime transaction or a contract involving a transaction in interstate commence." *Bangor Hydro-Electric Co. v. New Eng. Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 n.4 (D. Me. 1999). Ms. Baker has raised no jurisdictional objection to the application of section 3. Furthermore, Defendant posits that the same result would obtain under the Maine Uniform Arbitration Act. *See* 14 M.R.S.A. § 5927 *et seq.*; *Def.'s Mot.* at 6 n.7.

4

dispute has been subjected to arbitration if '(1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement'.")(citation omitted).

### B. The Law Applied to the Facts

Plaintiff initially argued that the first *Bangor Hydro* prong was not met, as Securitas failed to submit a copy of its arbitration agreement and, "as a consequence, on this record, the Court cannot determine whether or not Defendant's arbitration program is binding and enforceable against the Plaintiff". *Pl.'s Obj.* at 2. In its reply memorandum, however, Defendant cured any omission by attaching a copy of Securitas's arbitration agreement and Plaintiff's acknowledgment.[5] As the existence and terms of the Securitas Arbitration Program is now part of the record, this Court, having reviewed its specifics, concludes there is a "written agreement to arbitrate." *Bangor Hydro*, 62 F. Supp. 2d at 155. *See* 9 U.S.C. § 3.

As for the second prong, Plaintiff alleges Securitas violated the MHRA and intentionally or negligently inflicted emotional distress, based on a sexually-offensive work environment and unlawful gender discrimination. At stake here, then, are discrimination and tort claims – matters squarely within the scope of both Arbitration Programs.[6] In *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, 870 A.2d 146, the Maine Law Court noted that there is a "tension" between the "broad presumption in favor of arbitration" and the rule that "ambiguities are to be interpreted against the drafter", heightened in cases where "the parties to the contract are in unequal

---

[5] Local Rule 7(c) provides that a reply memorandum shall be "strictly confined to replying to new matter raised in the objection or opposing memorandum". *Id.* As Plaintiff raised the issue of whether Pinkerton's Arbitration Program covered the events in question, or whether Defendant needed to introduce evidence of the Securitas Arbitration Program, the materials Defendant proffers are in reply. *Cf. Martin v. Inhabitants of Biddeford,* No. 02-122-P-H, 2003 U.S. Dist. LEXIS 5375, *33 (D. Me. Apr. 1, 2003)(citing *In re One Bancorp Sec. Litig.,* No. 89-0315-P, 1991 U.S. Dist. LEXIS 1998, *12 n.5 (D. Me. Feb. 14, 1991)).

[6] The Pinkerton and the Securitas Arbitration Programs expressly cover "tort claims, claims for harassment, discrimination (including, but not limited to…sex….)…." *Pinkerton's Arbitration Program*, Section II, at 9; *Securitas Arbitration Program*, Section II, at 9.

5

bargaining positions." 2005 ME 43, ¶ 15, 870 A.2d at 149. This agreement constitutes the type of "take-it-or-leave-it" contract *Barrett* envisioned.[7] Nevertheless, even construing the arbitration agreement against the drafter, the agreement unambiguously covers the claims here.

The final prong is hotly contested by Ms. Baker, who argues that Securitas waived its right to arbitrate by failing to invoke the arbitration agreement until after she filed this law suit. *See Pl.'s Obj.* at 2-4. Plaintiff argues Defendant's silence "has prejudiced Plaintiff by the delay and expense incurred by completing the proceedings before the Maine Human Rights Commission". *Id.* at 3. Instead of promptly notifying her that it intended to invoke the arbitration agreement, "Defendant sat on its rights, participated in the Commission process with the Plaintiff and waited until after Plaintiff filed suit in state court…." *Id.* at 4.

The Securitas Arbitration Program, however, expressly "does not limit employees from using state or federal administrative processes". *Securitas Arbitration Program*, Section I, at 7. The Program states: "If the matter is not resolved through the administrative process, the employee still proceeds through arbitration rather than going to court." *Id.*[8] Despite this provision, Plaintiff argues that by waiting eighteen months before notifying her that it would invoke the arbitration agreement, Securitas waived the right to arbitrate, *Pl.'s Obj.* at 4, and that *Marie v. Allied Home Mortgage Corp.,* 402 F.3d 1 (1st Cir. 2005) is not to the contrary. *Id.*

---

[7] The Securitas Arbitration Program contains the following question and response: "Q: What if I don't want to be covered by this program? A: This program is a condition of employment. All employees, up to and including the President, are covered by the program. By being employed with Securitas, all employees agree to be covered by the program and waive the right to use the court system." *Securitas Arbitration Program*, Section I, at 5. The Pinkerton's Arbitration Program contained a briefer response to the same question: "A: All associates, up to and including the President, are covered by the program. By being employed at Pinkerton, all associates agree to be covered by the program and waive the right to use the court system." *Pinkerton's Arbitration Program*, Section I, at 5.

[8] The Pinkerton's Arbitration Program is more specific: "Q: May I still file a charge with a state administrative agency or the Equal Employment Opportunity Commission? A: Yes, the Pinkerton arbitration process does not limit associates from using state or federal administrative processes. If an associate goes through the EEOC or similar state administrative process, that does not mean the claim will ultimately be resolved in a court. If the matter is not resolved through the administrative process, the associate still proceeds through arbitration…." *Pinkerton's Arbitration Program*, Section I, at 7.

But, it is. *Marie* addressed a virtually identical situation. The First Circuit described the question: "The key issue is whether an employer waives its contractual right to compel arbitration of a Title VII claim by not filing for arbitration after the employee initiates an EEOC complaint, but instead waiting and only moving to compel arbitration after the employee later files a civil claim in federal court." *Id.* at 3. The First Circuit reviewed Supreme Court and Circuit precedent to the effect that an employer "cannot stop the EEOC, a third party, from bringing a public enforcement action against an employer by invoking an arbitration agreement between the employer and the relevant employee." *Id.* at 15 (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297-98 (2002)). *See also Brennan v. King*, 139 F.3d 258, 263-64 (1st Cir. 1998). *Marie* noted that if "the EEOC's investigation…cannot be stopped by invoking an arbitration agreement, then forcing the employee and employer to begin an arbitration proceeding during the pendency of that investigation will automatically result in two adjudications involving the same issue at the same time…." 402 F.3d at 16. *Marie* reaffirmed that "an employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate". *Id.*

Plaintiff argues that *Marie* "does not establish a *per se* rule that a party may delay invoking an arbitration clause until after completion of administrative proceedings and avoid a waiver. When other factors constituting waiver such as delay and prejudice are present such as in this case, the Court may still find a waiver". *Pl.'s Obj.* at 4. But, what delay and prejudice occurred in this case? Although Ms. Baker points to an eighteen-month interval between her assertion of the claim and Securitas's invocation of the arbitration agreement, the twelve-month period from

7

June 2004, when she initiated the MHRC complaint, to May 31, 2005, when the MHRC denied the claim, is the very period *Marie* sanctions. The delay during the months between May 31, 2005 and December 6, 2005 was caused solely by Ms. Baker herself as she waited to file suit – it makes no sense at all to require Securitas to invoke arbitration on a claim it has administratively won.

In a last ditch argument, Ms. Baker makes the novel assertion that Securitas's decision to remove the case to this Court is itself an impermissible delay. *Pl.'s Obj.* at 4-5. She cites no authority and this Court is aware of none holding that solely by invoking its statutory right to federal jurisdiction under 28 U.S.C. § 1332, a party waives its right to invoke an arbitration clause.[9] This argument strikes this Court as odd and without merit.[10]

Upon removal, Securitas acted properly and under this Court's protection in raising the arbitration issue. Securitas asserted the arbitration clause as an affirmative defense in its Answer. *Answer* (Docket # 8). The parties jointly brought the arbitration issue to the attention of the Court after the issuance of the Scheduling Order, *Joint Objection to Proposed Scheduling Order* (Docket # 10), and this Court stayed the Scheduling Order to allow the filing of a motion to compel arbitration. *Order granting in part Objection to Scheduling Order* (Docket # 11). Securitas complied with the deadline in the Order, as amended.[11] *Def.'s Mot.* In effect, this Court has approved the delay from the filing of the removal to the filing of this motion.

---

[9] Ms. Baker's only citation is to *In re Tyco Int'l Ltd. Sec. Litig.,* 422 F.3d 41 (1st Cir. 2005), which she uses to support the contention that "[b]y participating in this lawsuit and choosing a different forum to hear this motion, Defendant has acted inconsistently with its position that this claim should be heard by an arbitrator and waived any right to arbitration". *Pl.'s Obj.* at 5. The First Circuit noted in *Tyco* that one circumstance which might lead a court to determine an implied waiver of arbitral rights has occurred is when "the party has actually participated in the lawsuit or has taken other action inconsistent with…[its] right…" *id.* at 44 n.2. There is no suggestion, however, that mere invocation of federal jurisdiction is such an inconsistency. *Cf. Johnson Controls,* 222 F. Supp. 2d at 57-59.

[10] Ms. Baker makes no claim that Securitas's removal was in bad faith, without just cause, or solely for the purpose of delay. Indeed, removal followed rapidly on the heels of the initial filing of the complaint in state court.

[11] The parties filed a consent motion to extend time to and including February 27, 2006 to file the motion to compel arbitration, which was granted. (Docket #s 12-14).

The Maine Law Court has noted that "delay alone, or expenses that would have also been incurred in arbitration, are not enough to support a finding of prejudice." *Saga Commc'ns. of New England, Inc. v. Voornas,* 2000 ME 156, ¶ 17, 756 A.2d 954, 961 (citation omitted). *Saga* stated that "the proper focus is on the effect of the delay upon the party opposing arbitration." *Id. See also Navieros Inter-Americanos, S.A. v. M/V Vasilia Express,* 120 F.3d 304, 316 (1st Cir. 1997). Here, Ms. Baker says she was prejudiced because of "the delay and expense incurred by completing the proceedings before the Maine Human Rights Commission" and she asserts that she "could have bypassed the Commission process by requesting a right to sue letter." *Pl.'s Obj.* at 3-4. But, it was Ms. Baker's decision to proceed to the MHRC and, as *Marie* points out, Securitas could not have prevented her from doing so by invoking the arbitration clause. Plaintiff has shown no other prejudice resulting from the delay in Securitas's invocation of the arbitration clause. Because Securitas was not required to invoke the arbitration agreement prior to this litigation and because Ms. Baker has not demonstrated any cognizable prejudice, this Court concludes that Securitas has not waived its right to invoke the arbitration clause in its employment agreement.

### C. Stay or Dismiss?

Having concluded that Ms. Baker's claims against Securitas are arbitrable, the remaining question is whether this action should be dismissed or stayed. *See Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998); *Boulet v. Bangor Sec., Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004); *Bangor-Hydro*, 62 F. Supp. 2d at 161 n.9. "When all the issues before the court are arbitrable, the court may dismiss, rather than stay, the case." *Boulet*, 324 F. Supp. 2d at 127 (citing *Bercovitch*, 133 F.3d at 156 n.21). Quoting *Bangor Hydro*, Judge Hornby pointed out, "dismissal has several advantages":

> Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner provided by law. This course of action will also make the arbitrability issue immediately appealable and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal.

*Boulet*, 324 F. Supp. 2d at 127 (quoting *Bangor Hydro*, 62 F. Supp. 2d at 161 n.9 (internal quotation omitted)).

The advantages of dismissal obtain here.  If the parties arbitrated and then returned to this Court, they would do so under markedly different legal theories and standards.  Alternatively, if Ms. Baker wished to challenge this ruling on appeal, she would be free to do so.  Nevertheless, following a conference of counsel on May 5, 2006, the parties expressed concern that a dismissal could raise potential statute of limitations issues.  In view of their concern, this Court will stay the action rather than dismiss the complaint.  However, to maintain control of its docket, this Court ORDERS counsel to prepare and file a joint status report within six months from the date of this Order, or by November 6, 2006.

### III.  Conclusion

Defendant's Motion to Stay Proceedings and Compel Arbitration is GRANTED.  The action is STAYED and the parties are ordered to proceed to arbitration in accordance with the procedures established in the Securitas Arbitration Program.  The parties are ORDERED to prepare and file a joint status report by November 6, 2006.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of May, 2006